NOT DESIGNATED FOR PUBLICATION

No. 127,701

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DARREN L. HENRY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Oral argument held February 10, 2026. Opinion filed July 10, 2026. Affirmed.

*Dylan J. Pryor*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., HILL and GARDNER, JJ.

HILL, J.: Darren L. Henry contends that the district court abused its discretion by not dismissing his aggravated robbery charge after it learned that the State had acquired privileged attorney-client information. The State had seized the privileged material while executing a search warrant authorizing the search of Henry's jail cell and property bag. The search warrant was issued by a different judge based on information received by the police about a possible death threat to a witness in the aggravated robbery case. Rather than dismissing the case, the court crafted a remedy for the problem.

First, the trial court barred the admission of any of the evidence obtained from the search warrant. Then, it disqualified the prosecutor who had participated in the search and subsequent evaluation of the privileged materials. The court also disqualified the court-appointed defense counsel because he might become a witness in this case and then appointed new counsel as a replacement. But the court did not disqualify the entire district attorney's office as Henry had asked, nor did it dismiss this case with prejudice, also as requested by Henry. Henry now claims the court's refusal to grant his motions is an abuse of discretion based on a legal error. He contends this was reversible error. We disagree because Henry has failed to show us that he was prejudiced by the court's rulings.

*The State acts on jailhouse information.*

While Henry was incarcerated awaiting trial on his aggravated robbery charge, a jailhouse informant told officers that Henry was soliciting the murder of the convenience store clerk, the victim in his aggravated robbery case. Believing Henry possessed personal information about the victim through some unredacted or improperly redacted discovery sent to him by his attorney, the State sought and obtained a search warrant to search Henry's jail cell. In other words, an investigation of a possible charge of criminal solicitation yielded to the State all of Henry's confidential attorney-client material produced so far in this prosecution.

Four people executed the search warrant: Senior Assistant District Attorney Nicholas Vrana, Senior Assistant District Attorney Seth Brackman, Lawrence Police Department Detective for Henry's solicitation of murder case Kimberlee Nicholson, and Lawrence Police Officer Sarina Robb. During the search of Henry's jail cell, Robb found a large stack—described in the record as about a foot and a half high—of manila folders, with labels such as "Legal Mail" and "Caselaw and Other Notes and Legal Material."

The stack was removed from Henry's cell and taken to an interview room, where the videotape of the search shows Robb parsing through each document with Nicholson and Vrana in the room. Ultimately, just two documents were seized by the police: a copy of some material sent to Henry's attorney and a copy of a report by an investigator hired by Henry's lawyer. The report was from ELE Investigations, contained a "Confidential" notice at the top right corner, and stated, "Attorney Eyes Only." A facsimile follows:

CONFIDENTIAL

## ELE INVESTIGATIONS
**E.L. BRUNT**
P.O. Box 3926 * Lawrence, Kansas 66046-3926 *edbrunt@sunflower.com * (785) 766-0975-cell
*(785) 856-3122-fax

December 31, 2020
**ATTORNEY EYES ONLY**

Henry moved to suppress the items seized during the State's search of his jail cell. He also moved for the return of his property and filed a notice of transmission of his privileged materials, maintaining his claim of privilege. The State argued that it had set up a "taint team" to safeguard any confidential communications between Henry and his lawyer. The trial court was not convinced.

The court was told that the State had tried to shield the investigators and the prosecutors in Henry's pending aggravated robbery case from the confidential information that was obtained from the search warrant issued in their criminal solicitation investigation. In the State's brief, we are told that the State's goal was to keep the information segregated by case and by using different personnel. A prosecutor not prosecuting the case and an investigator not investigating the case were to handle the materials they grabbed. In court, they called this a "taint team." In our view, the attempt failed, and all of Henry's documents became tainted.

3

*The district court took steps to erase the taint.*

The district court found that Henry had suffered prejudice by the State's search of his privileged materials. In its remarks, the court emphasized that the State took no real steps to safeguard these materials:

> "At no time were any written protocols in place before the search was conducted; no written protocols were consulted; no protective orders were put in place regarding the documents after they were seized; no inventory list of the documents searched was made; no restrictions were put in place regarding the seized documents that were scanned into a computer . . . ."

The district court found that Nicholson—the lead investigator in Henry's case and who was to be shielded from the seized material—was exposed to all the privileged information. She "was in the room inches away from all the paperwork that was searched with a clear view of that paperwork; in fact, at least one document is held up to her face for her review." The court noted that Nicholson even "stated that she reviewed other documents to look for handwriting samples." And the court found that Nicholson was involved in the discussion about the privileged documents while in the interview room during the search.

The court also found that the prophylactic purpose of the taint team was nullified by Nicholson's presence, especially given her testimony that she was present so she could give context to the others, "which flies in the face of the purpose of the taint team." The court also held that there was no reason that Nicholson, "a person who was actively involved in the investigation of what would [later] become 22 CR 93, the solicitation [of murder] case, needed to be in that room."

4

As a result, the district court found that Henry suffered prejudice by the State's intrusion into his privileged materials, reasoning that Henry had proved prejudice based on the "way the search was conducted as well as the procedures or lack thereof were conducted after the fact."

But the court did not find that dismissal of Henry's criminal charges was appropriate. Instead, the court found that prohibiting the State from using the privileged report and prohibiting Nicholson from testifying at trial was the proper remedy. The court concluded that these remedies were sufficiently tailored to the injury suffered while still protecting the integrity of the case. The pace of the prosecution slowed at this point.

*The district court did not stop there.*

After the court had ruled on the use of any privileged information obtained by the State, the State moved for sanctions and the disqualification of Henry's attorney, Adam Hall, based on Hall's dissemination of personal identifying information about the victim to Henry, in violation of a discovery statute.

At a hearing on that sanction motion, the State argued that Hall would be a necessary witness and would be "crucial for the State to be able to prove their case" because he provided Henry with the report containing the victim's personal information. The State also argued that there were no alternatives to Hall's testimony because just admitting the report itself did not explain how Henry obtained the report. The State contended that Hall's testimony would be "vital to explain how this document, which corroborates additional testimony that helps prove the State's case, came into the defendant's possession, and that alone makes it a conflict that prevents Mr. Hall from zealously representing Mr. Henry while also testifying against him."

5

The district court disqualified both Hall and the State's lead prosecutor, David Greenwald, in Henry's cases. The court found that removing both attorneys protected the integrity of the case. The court noted that Greenwald's continued involvement in the case raised concerns arising from the intrusion into Henry's privileged materials.

After the court removed Greenwald from prosecuting Henry's cases, the State struggled to find a new prosecutor to take over the prosecution of Henry. At one hearing, the State told the court that it had yet to find conflict-free counsel. The State noted that it had requested assistance from the Attorney General's Office and pursued prosecutors from a different jurisdiction but had yet to find a new prosecutor. Then, a month later, the State told the court that it had still been unable to find a new prosecutor, stating that the Attorney General's Office declined to prosecute this case. Finally, after another two months, the State chose another lawyer from its office to take over the prosecution of Henry's cases.

With this new prosecutor, this case proceeded to a jury trial. The jury found Henry guilty of aggravated robbery.

At sentencing, the district court noted that it had never seen a case where the State searched a defendant's jail cell and obtained privileged information, and the court hoped to never see it again. The court stated that this could have been avoided in many ways and that it was "incredibly unfortunate" that Henry's privileged materials were acquired by the State in this case. The court then stated that removing Henry's attorney was a decision the court made with the "information the Court had at the time that the State was going to file a disciplinary complaint against [Henry's] attorney." And the court recognized that this decision was not Henry's wish. Then, the court stated that it thought "that the State ha[d] acknowledged what they could have done differently." And the court noted that there was the new attorney for the State appearing in Henry's cases who had "acknowledged all of those wrongs on many occasions."

6

The court sentenced Henry to a prison term followed by a period of postrelease supervision.

*Henry appeals, raising three issues.*

Did the district court err by not dismissing the charge of aggravated robbery after finding that the prosecution obtained privileged information through its search?

Did the court err in disqualifying Hall, Henry's court appointed defense counsel?

Did the court err by not suppressing the victim's in-court identification of Henry during the trial?

*Our Rules of Professional Conduct do not reach as far as Henry wants.*

Henry argues that his conviction must be reversed because he was denied his right to effective legal counsel. Basically, Henry relies only on his claim of a breach of attorney ethical rules by the Douglas County District Attorney's Office when it obtained his attorney-client privileged information. In Henry's view, the entire office should have been disqualified from participating in his trial. He claims his conviction must be reversed because the State obtained this information.

A review of our Supreme Court Rules leads us to hold that relying solely on claimed violations of our attorney ethical rules is not the correct path to follow. We disagree with Henry's premise because of the legal status of our attorney ethical rules. Simply put, those attorney disciplinary rules do not impose a legal duty.

The practice of law is a learned profession. Supreme Court Rule 240 sets the general standards of conduct and practice required by the legal profession in Kansas. They guide an attorney's professional actions and serve as the basis for attorney discipline. But we cannot say their violation forces a court to take action in a case.

The Scope section at the beginning of Rule 240 provides: "[V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." Supreme Court Rule 240, Scope [20] (2026 Kan. S. Ct. R. at 322). Our Supreme Court relied on that passage in *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 325, 918 P.2d 1274 (1996), stating: "[A]n attorney's violation of the ethics rules cannot create a cause of action available to adverse litigants or even to clients. This is because the ethics rules do not impose a legal duty on the attorney owing to either a client or a third party."

In *State v. Miller*, 308 Kan. 1119, 427 P.3d 907 (2018), a defendant's son was living rent-free in an assistant district attorney's home. The district court had disqualified the assistant district attorney from prosecuting Miller's case but not the entire office. The court stated: "[E]thical analysis is separate from the legal question of whether the trial court abused its discretion by refusing to disqualify the [district attorney's] office in this criminal proceeding." 308 Kan. at 1150.

We agree with the principles provided in *OMI Holdings* and *Miller*. When we apply those principles to this case, we must hold that Henry cannot rely solely on his claims of unethical conduct of the District Attorney's Office as a reason to overturn his conviction. Henry must show some prejudice, not just rely on claims that the State possessed his privileged materials. This means we must rely on the traditional Sixth Amendment to the United States Constitution analysis to decide the claims raised by Henry in this appeal.

8

*Henry must show prejudice.*

The Sixth Amendment guarantees an accused the right to effective assistance of counsel and thus helps to assure an accused the fundamental right to a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We emphasize the right to counsel relates to the right to a fair trial. This means that Henry must show us how his trial was negatively affected by the State's actions.

All accused have a right to communicate confidentially with their counsel in order to preserve the privilege set out in K.S.A. 60-426 and 60-426a. To establish a Sixth Amendment violation of an accused's right to counsel, an accused must show "(1) that the [prosecution] intentionally intruded into the defense camp and (2) that the intrusion caused prejudice." *United States v. Hohn*, 123 F.4th 1084, 1092 (10th Cir. 2024). Prejudice was defined by the *Hohn* court as "a realistic possibility of injury to the defendant or benefit to" the prosecution during the proceedings. 123 F.4th at 1092. While we have no doubt that the State here has "intruded into the defense camp," as contemplated by the court in *Hohn*, 123 F.4th at 1092, we must see if Henry was prejudiced by this and, if so, what is an appropriate remedy.

In *Hohn*, the Tenth Circuit Court of Appeals found that there was no violation of a prisoner's Sixth Amendment right to confidential attorney-client communications when a recording of a six-minute telephone call with his trial attorney was disclosed to the prosecutors. 123 F.4th at 1109-10. Even though the intrusion of the government was intentional and had no apparent law-enforcement purpose, the court ruled that reversing the conviction by dismissing the case with prejudice was not called for because Hohn showed no prejudice. 123 F.4th at 1117. Hohn did not show that the prosecution team had used the contents of that call to anticipate or counter his defense at trial.

9

Like Hohn, Henry has failed to show us prejudice. How did the State use this material to Henry's disadvantage? He shows us nothing but the fact that his materials had been examined. But more appropriate here, in light of the remedy built by the district court, how was Henry prejudiced? After all, the prosecutor exposed to the materials was disqualified. The evidence collected from the search was barred from admission into evidence. And Henry received a new defense counsel to develop a fresh new trial strategy.

Henry's primary claim of prejudice is that the documents may have contained trial strategy, making prejudice unknowable or immeasurable. But the *Hohn* court rejected the same claim of prejudice, finding prejudice is not "immeasurable when attorney-client communications contain trial strategy." 123 F.4th at 1110.

Because Henry fails to show us how his trial was marred by the State obtaining these materials, Henry has failed to show us that he has been denied his Sixth Amendment right to effective defense counsel.

*Disqualifying appointed defense counsel is not reversible error here.*

The State moved to disqualify Henry's attorney, Hall, alleging that Hall violated a discovery statute by providing Henry with an investigative report containing the victim's personal information. Henry opposed the State's motion. After an evidentiary hearing, the district court granted the State's motion and disqualified Hall from representing Henry.

Henry argues that he had the right to continuing representation by Hall in the absence of compelling circumstances for disqualification and that the district court abused its discretion by disqualifying Hall. He claims that Hall was not a necessary witness nor was there an actual conflict or a serious potential for conflict requiring that he be disqualified.

10

In opposition, the State argues that Henry's Sixth Amendment right to counsel of choice was unimplicated by the district court's decision to remove Hall from representing Henry. The State next contends that, even if Henry's Sixth Amendment right to counsel of choice was implicated, the district court had "substantial latitude" to constitutionally disqualify Hall for, among other reasons, even "a serious potential for conflict."

Along the same line, the State argues that the district court appropriately balanced the interests involved when it removed Hall for the potential conflicts of interest his dissemination practices created. The State claims (1) Hall's conduct was at least debatably unlawful or unethical; (2) there was serious potential that necessity likely could have made Hall a witness against his client; and (3) the potential that these circumstances reasonably could have impaired Hall's representation outweighed any interest Henry had in keeping Hall.

*This is a question of trial court discretion.*

A district court's decision to disqualify a party's attorney is reviewed for an abuse of discretion. *Miller*, 308 Kan. at 1148. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

The State raised a potential conflict of interest between Henry and his attorney, alleging that Hall violated a discovery statute by providing unredacted paperwork containing the victim's personal identifying information. The unredacted paperwork was the report prepared by Hall's investigator found in Henry's jail cell during the State's search.

11

At the hearing on the motion to disqualify Hall, the State alleged two additional bases for disqualifying Hall: (1) Hall would be a necessary witness in the State's prosecution of Henry; and (2) by providing the report to Henry with the victim's information, Hall may have aided and abetted Henry's solicitation of the victim's murder.

As we approach this issue, we must take into account that this was a pretrial ruling that Henry claims is a reversible error. He was tried and convicted in a jury trial well after the court disqualified Hall. Henry points out nothing in his trial that would have been different if Hall was the trial attorney. Instead, Henry's fundamental point is that he liked Hall and the court should not have granted the State's motion disqualifying him.

Our Supreme Court has taken the interlocutory nature of this type of issue into account.

> "An order disqualifying counsel is not a final decision for purposes of an appeal pursuant to K.S.A. 60-2102(a)(4), which requires a final decision before an appellate court acquires jurisdiction. The only appellate remedy available to a party appealing from an order disqualifying counsel, at least in the circumstances where the issue is intertwined with the merits of the case, is to take an interlocutory appeal or to appeal after a final decision." *Flores Rentals v. Flores*, 283 Kan. 476, Syl. ¶ 5, 153 P.3d 523 (2007).

Considering the positions taken by the parties and the circumstances of having to cope with the revelation of attorney-client communications, we find it reasonable for the trial court to foresee that Hall could be called as a witness, especially about the unredacted investigator's report. In our view, this was a reasonable act of discretion by the court, not an abuse of discretion.

12

*Henry's third issue was not preserved.*

For his final challenge to his conviction, Henry claims the victim's in-court identification at his preliminary hearing should have been suppressed because it was done in an unnecessarily suggestive way and had a substantial likelihood that the victim misidentified Henry as the robber.

At Henry's preliminary hearing on this aggravated robbery charge, the victim identified Henry, who was dressed in jail garb, as the person matching the description of the suspect from the night of the robbery. Henry moved to suppress the in-court identification during his preliminary hearing, and he raised the issue again before the victim's testimony at trial. The district court denied the motion after a hearing.

At trial, the victim once again identified Henry as the robber. Henry did not make a contemporaneous objection to the victim's identification of Henry and admits in his brief that he did not object. Instead, he urges us to review the issue anyway to serve the ends of justice.

We cannot do so because we do not issue advisory opinions.

Our Supreme Court takes a firm stand on unpreserved evidentiary questions: Do not consider them.

> "K.S.A. 60-404 permits only one outcome regarding unpreserved evidentiary challenges: that the challenge will not be the basis for setting aside the verdict or reversing the judgment. Thus, for an appellate court to go beyond this pronouncement and consider the merits of the unpreserved challenge—even to conclude no error occurred—would be akin to an advisory opinion. And 'Kansas courts do not render advisory opinions.'" *State v. Sinnard*, 318 Kan. 261, 282, 543 P.3d 525 (2024).

13

This admonition is clear. Henry did not preserve this evidentiary question, and we will not consider it.

*Conclusion*

In conclusion, we must observe that the trial court used great care and concern about fairness to both parties when it crafted its solution to the problems created by the execution of the search warrant. The court was confronted with a difficult situation and, on balance, it treated both sides fairly and reasonably.

To balance the scales, the court simply started over. By barring the admission of any of the confiscated and privileged attorney-client communications, the court preserved Henry's legal privilege in this prosecution. The court sidestepped the potential pitfall of defense counsel being called as a witness by appointing new defense counsel. Henry's claims about attorney-client privilege and choice of counsel ask us to equate his personal preferences to legal prejudice because he fails to show us prejudice as the law requires. We decline his request. Ultimately, this contest between the State and Henry was resolved by a jury in a fair trial.

Affirmed.